**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CURRIER, MCCABE &**
**ASSOCIATES, INC. d/b/a**
**CMA Consulting Services,**

      **Plaintiff,**      **1:13-cv-729**
                 **(GLS/RFT)**

     **v.**

**PUBLIC CONSULTING GROUP,**
**INC.,**

      **Defendant.**
_____

**APPEARANCES:**       **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Mills Law Firm       CHRISTOPHER K. MILLS, ESQ.
1520 Crescent Road
Suite 100
Clifton Park, NY 12065

**FOR THE DEFENDANT:**
Wiltshire, Grannis Law Firm     CHARLES T. KIMMETT, ESQ.
1200 Eighteenth Street, N.W.     MARK D. DAVIS, ESQ.
12th Floor          MICHAEL J. CARLSON, ESQ.
Washington, DC 20036

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Currier, McCabe & Associates, Inc. d/b/a CMA Consulting

Services (CMA), commenced this diversity action against defendant Public Consulting Group, Inc. (PCG), alleging breach of contract and related claims, and seeking not less than $1.2 million in damages. (Compl. ¶¶ 12-34, Dkt. No. 1.) Pending is PCG's motion to dismiss for failure to state a claim. (Dkt. No. 9.) For the reasons that follow, PCG's motion is granted in part and denied in part.

## II. **Background**[1]

On March 5, 2013, CMA, a minority or women-owned business enterprise (MWBE) and New York corporation, entered into a "Teaming and Confidentiality Agreement" (TCA) with PCG, a Massachusetts corporation. (Compl. ¶¶ 3, 4, 6, 19.) The purpose of the TCA was to "establish a working relationship between PCG and CMA in order to develop, submit[,] and support a proposal in response to the" request for proposals (RFP) by New York State Department of Health, Division of Family Health, Bureau of Early Intervention (DOH) "for certain services," "under which PCG will be proposed as the prime contractor and CMA[]will

---

[1] The facts are drawn from the complaint and the Teaming and Confidentiality Agreement, which, as explained below, *see infra* Part IV.A.1, is integral to the complaint.

2

be proposed as a subcontractor." (Dkt. No. 9, Attach. 2 at 2, 7; Compl. ¶ 7.) The TCA further provides, among other things, "PCG will exercise commercially reasonable efforts to secure CMA as a subcontractor, consistent with the Proposal," "CMA acknowledges that PCG cannot make any guarantee or give any assurance that a subcontract will be entered into between PCG and CMA," but "[i]f a contract is awarded to PCG, and if CMA can meet all necessary requirements for a subcontract, including but not limited to satisfying PCG's standard requirements for subcontractors and obtaining any necessary approval by [DOH], then PCG will enter into a subcontract with CMA." (Dkt. No. 9, Attach. 2 at 3.)

The terms and conditions of the subcontract were to be "negotiated in good faith by the parties" if the preconditions were met for entering into one, but, among other things, "[t]he subcontract [was to] specify a minimum CMA project participation rate of twenty percent (20%) of the total contract value." (*Id.*) While CMA met its obligations under the TCA, PCG refused to "honor its obligations" under the TCA or "submit a proposal to DOH including CMA as a subcontractor." (Compl. ¶¶ 14, 15.)

CMA commenced this action in June 2013, alleging claims of breach of contract, fraudulent inducement, breach of the implied warranty of good

3

faith and fair dealing, and unjust enrichment. (Compl. ¶¶ 12-34.) Prior to any discovery or joinder of issue, PCG moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. No. 9.)

### III. Standard of Review

The standard of review under Fed. R. Civ. P. 12(b)(6) is well settled and will not be repeated here. For a full discussion of the standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010).

### IV. Discussion

Before delving into the arguments raised in the pending motion to dismiss, it is helpful to outline CMA's claims and their factual predicates. In the complaint, CMA alleges that, despite its full performance and its willingness to perform subcontractor services as detailed in the TCA, PCG breached the TCA "by explicitly stating that it does not intend to honor its obligations under the [TCA], and has otherwise breached the [TCA] by refusing to submit a proposal to DOH including CMA as a subcontractor." (Compl. ¶¶ 14, 15.) CMA further alleges that "PCG's failure to honor its obligations under the [TCA]" caused it to sustain money damages. (*Id.* ¶ 16.)

With respect to its claim of fraudulent inducement, CMA alleges that, during the time that the parties were negotiating the TCA, "PCG made certain factual representations to CMA in an effort to secure CMA's participation in PCG's proposal." (*Id.* ¶ 18.) "PCG represented that CMA's status as a [MWBE] would assist PCG in obtaining the subject contract as part of the State of New York's effort to encourage and assist state agencies that are engaged in contracting activities to award a fair share of state contracts to [MWBEs]." (*Id.* ¶ 19.) PCG made other "representations" to CMA regarding the ability of it and other prospective bidders to secure the contract with DOH, (*id.* ¶ 20), and "additional representations [and] omissions" and engaged in conduct prior to execution of the TCA "in an effort to induce CMA to enter into" it, (*id.* ¶¶ 21, 22). The TCA prohibited CMA from submitting a proposal in response to the RFP that competed with PCG's, or from assisting any other party in obtaining the DOH contract. (*Id.* ¶ 23.) CMA alleges that PCG made fraudulent representations to induce it to enter the TCA, prevent it from submitting its own proposal, and prohibit it from assisting other companies in obtaining the DOH contract. (*Id.* ¶ 24.) The foregoing caused damage to CMA. (*Id.* ¶ 25.)

As for CMA's claim of breach of the implied warranty of good faith and fair dealing, it alleges that PCG failed to act in good faith, preventing CMA from submitting its own proposal or entering into teaming agreements with other entities, and inhibited CMA from enjoying the benefits and privileges of its subcontract agreement with PCG. (*Id.* ¶¶ 28-29.) PCG's breach caused damage to CMA. (*Id.* ¶ 30.)

Finally, CMA alleges that PCG was unjustly enriched by its provision of proprietary and confidential information in preparing PCG's proposal, which resulted in damage to CMA. (*Id.* ¶¶ 33-34.)

Turning to PCG's motion, it argues that CMA has failed to state a claim with respect to the foregoing causes of action. (Dkt. No. 9, Attach. 1 at 5-23.) It contends first that the court must rely on the TCA itself, and should not consider CMA's characterizations of it in its complaint. (*Id.* at 2-3.) As for CMA's breach of contract claim, PCG generally argues that, under the Rule 8 pleading standard, it should be dismissed as too conclusory. (*Id.* at 5-6.) PCG identifies two possible theories of breach—the first, "based on PCG's failure to enter into a subcontract with CMA after being awarded the prime contract by DOH" and, the second, "based on PCG's purported failure to include CMA as a proposed

6

subcontractor in its proposal to DOH"—and argues that both fail. (*Id.* at 5-15.)  As for the first proposed breach, PCG contends that the TCA, "[w]ith respect to a future subcontract agreement," is unenforceable based upon its plain language and that the TCA as it relates to a future subcontract is, at most, "an unenforceable 'agreement to agree.'" (*Id.* at 6-12.)  Regarding the second theory of breach, PCG argues that CMA's failure to plead damage resulting from the alleged failure to include CMA in its proposal to DOH is fatal to the claim. (*Id.* at 12-15.)[2]

PCG argues that CMA's claim of fraudulent inducement is deficient because it was not pleaded with sufficient particularity under Fed. R. Civ. P. 9(b) and CMA failed to allege all of the essential elements for such a claim. (*Id.* at 15-19.)  Because the TCA is not an enforceable contract, contends PCG, CMA cannot plead a claim of breach of the implied duty of good faith and fair dealing; moreover, PCG asserts that the complaint is

---

[2] PCG also claims that, "[b]ecause CMA cannot allege that PCG's failure to include it in a proposal to DOH caused CMA any injury, it lacks standing." (Dkt. No. 9, Attach. 1 at 14-15.)  The court disagrees. Because the TCA required PCG to include CMA as the proposed subcontractor in the proposal, (Dkt. No. 9, Attach. 2 at 2), PCG's failure to do so evinces a breach of the TCA, and plainly demonstrates an injury in fact to CMA's legally protected contract rights. *See Vazquez v. Salomon Smith Barney Inc.*, No. 01 CIV 2895, 2002 WL 10493, at * 5 (S.D.N.Y. Jan. 4, 2002).  Accordingly, PCG's standing argument is rejected.

not sufficiently particularized with respect to this claim. (*Id.* at 19-21.) Finally, PCG argues that CMA has failed to state a claim of unjust enrichment. (*Id.* at 21-23.) PCG urges the court to disregard CMA's "conclusory allegations that it provided" proprietary and confidential information; it then faults CMA for failing to detail the "nature of the information that it provided to PCG" so that the court can determine whether it is "confidential and proprietary," claims that CMA alleged, at most, only threadbare recitals of the required elements, and, finally, asserts that the TCA specifically required the exchange of such information. (*Id.*)

In opposition, CMA argues that PCG improperly relies on the TCA in support of its motion, which is outside of the pleadings and "must be excluded from consideration." (Dkt. No. 14 at 5, 6-7.)[3] CMA then summarily contends that the facts alleged in the complaint are sufficient to withstand PCG's motion. (*Id.* at 8-11.)

---

[3] It is noted that the first four pages of factual background provided by CMA in its response, (Dkt. No. 14 at 1-4), are disregarded to the extent that those facts are outside of the complaint. It is ironic that CMA, who stringently argues that the TCA should be excluded from consideration as "outside of the pleadings," (Dkt. No. 14 at 5, 6-7), provides details in its response that are not alleged in its pleading either.

8

A.  **<u>Preliminary Matters</u>**

   *1.   Scope of Review*

As an initial matter, because the parties disagree about the court's consideration of the TCA, (Dkt. No. 9, Attach. 1 at 2-3; Dkt. No. 14 at 6-7; Dkt. No. 16 at 3-5), the court must ascertain what it may properly consider in deciding PCG's motion to dismiss. Simply put, because the TCA is integral to the complaint, which alleges a breach of the TCA, and closely related claims, the court considers it in deciding the merits of PCG's motion. *See Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 156-57 (2d Cir. 2006); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153-54 & 153 n.4 (2d Cir. 2002). The court also notes that the declaration and addendum submitted by PCG in support of its reply, (Dkt. No. 16, Attach. 1), are excluded from consideration as outside of the pleadings, *see* Fed. R. Civ. P. 12(d), and those documents were not considered.

   *2.   Applicable Law*

PCG avers that Massachusetts law applies to CMA's claims, but recognizes that, if New York and Massachusetts law conflict on the fraudulent inducement claim—which it contends "there appears to be no

conflict"—New York law applies to only that claim.[4]  (Dkt. No. 9, Attach. 1 at 6 n.2, 15 n.4.)  PCG waffles on this issue and fails to affirmatively argue which state's law applies, but it, unlike CMA, at least made some attempt to identify the law that controls this diversity action.  The only hint CMA gives regarding the choice of laws issue comes from the complaint, where it prays for relief "as provided by the laws of the State of Massachusetts."  (Compl. at 7.)  For reasons explained below, with the exception of CMA's claim of fraudulent inducement, which is governed by New York law, Massachusetts law applies to claims in this action.

Here, the TCA expressly provides that it "is governed by the laws of the Commonwealth of Massachusetts."  (Dkt. No. 9, Attach. 2 at 6.)  Accordingly, Massachusetts law controls, consistent with the TCA, as to all claims with the exception of CMA's claim of fraudulent inducement, which

---

[4] It is noteworthy that the case cited by PCG in support of its assertion, (Dkt. No. 9, Attach. 1 at 15 n.4), directly controverts the proposition that no conflict is apparent between New York and Massachusetts law.  *See G.L.M. Sec. & Sound, Inc. v. LoJack Corp.*, No. 10-CV-04701, 2011 WL 4594825, at *5 (E.D.N.Y. Sept. 30, 2011) ("[A]s to a fraudulent inducement claim, New York and Massachusetts law have an actual conflict.")  As explained in *G.L.M.*, New York law bars claims of fraudulent inducement where such claims arise out of the same facts that support a pleaded breach of contract claim, whereas Massachusetts law is without any such bar.  *Id.*

requires the court to undertake a choice of law analysis.  *See Aramarine Brokerage, Inc. v. OneBeacon Ins. Co.*, 307 F. App'x 562, 564 (2d Cir. 2009) ("Under New York's choice of law rules, it is clear that in cases involving a contract with an express choice of law provision . . . a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction, unless there is fraud, violation of public policy, or no reasonable basis for choosing the law of the jurisdiction designated by the parties." (internal quotation marks and citations omitted)); *Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 335 (2d Cir. 2005) ("Under New York law, . . . tort claims are outside the scope of contractual choice-of-law provisions that specify what law governs construction of the terms of the contract, even when the contract also includes a broader forum-selection clause." (citation omitted)).

This very issue was addressed by the Eastern District of New York in *G.L.M. Security & Sound, Inc. v. LoJack Corp.*, No. 10-CV-04701, 2011 WL 4594825, at *4-5 (E.D.N.Y. Sept. 30, 2011).  For the reasons explained in *G.L.M.*—namely, that an actual conflict exists between New York and Massachusetts law, fraudulent inducement is a conduct-regulating tort, and the alleged injury was felt in New York where CMA resides—New York law

applies to CMA's claim of fraudulent inducement under the appropriate choice of law analysis and further discussion is not warranted. *See G.L.M.*, 2011 WL 4594825, at *5-6.

**B.     CMA's Claims**

Having resolved the foregoing issues, the court turns to CMA's claims. For the reasons explained below, CMA's claim of fraudulent inducement is dismissed. PCG's motion is denied, however, with respect to the remaining claims.

*1.     Breach of Contract*

In order to state a claim for breach of contract under Massachusetts law, the plaintiff must allege that: "(1) [a]n agreement was made between the plaintiff[] and the defendant supported by a valid consideration; (2) the plaintiff[] ha[s] been ready, willing, and able to perform; (3) the defendant's breach has prevented [the plaintiff] from performing; and (4) the plaintiff[] ha[s] suffered damages." *Gregory v. World Sav. Bank, FSB*, Civil Action No. 11-11600, 2012 WL 3686633, at *2 (D. Mass. Aug. 22, 2012) (citing *Singarella v. City of Boston*, 173 N.E.2d 290, 291 (Mass. 1961)). Going to the first element,

> [a]n  agreement  to  reach  an  agreement  is  a

> contradiction in terms and imposes no obligation on the parties thereto, in the circumstances that justify and gave rise to it: where parties have merely reached the stage of imperfect negotiation prior to formalizing a contract, and have not yet reduced their agreement to terms. When parties have progressed beyond that stage, however, a competing principle applies: a contract should be interpreted so as to make it a valid and enforceable undertaking rather than one of no force and effect.

*Lafayette Place Assocs. v. Boston Redevelopment Auth.*, 694 N.E.2d 820, 826 (Mass. 1998) (internal quotation marks and citations omitted)). An indication in the agreement that some terms are to be negotiated at a later time does not render the agreement per se unenforceable. *Id.* Indeed where the "parties specify formulae and procedures that, although contingent on future events, provide mechanisms to narrow present uncertainties to rights and obligations, their agreement is binding." *Id.*

Here, CMA has plausibly alleged a claim for breach of contract. (Compl. ¶¶ 12-16.) With respect to PCG's arguments, while it is true that the TCA provides that "CMA acknowledges that PCG cannot make any guarantee or give any assurance that a subcontract will be entered into," it clearly sets forth a set of contingencies, the satisfaction of which required the provision of a subcontract to CMA. (Dkt. No. 9, Attach. 2 at 3.) In

particular, the TCA specifies:

> If a contract is awarded [by DOH] to PCG, and if CMA can meet all necessary requirements for a subcontract, including but not limited to satisfying PCG's standard requirements for subcontractors and obtaining any necessary approval by [DOH], then PCG *will* enter into a subcontract with CMA. The terms and conditions of the subcontract will be negotiated in good faith by the parties.

(*Id.* (emphasis added).) Despite the pronouncement that terms and conditions of a subcontract would be negotiated at some future time, in the two paragraphs that follow the foregoing language some important terms of such a subcontract were specifically contemplated and agreed to by the parties. In particular, "any resulting subcontract" was required to include six identified provisions substantially the same as those in the TCA, and "specify a minimum CMA project participation rate of twenty percent (20%) of the total contract value which can be increased by mutual consent of the parties." (*Id.*) Finally, "Attachment A" sets out a "proposed scope of work," which the parties agreed "to further detail . . . during the preparation of the proposal," but includes six specific services CMA was to provide in part or whole. (*Id.* at 7.) These contingencies, the procedures identified for determining the terms and conditions of the subcontract, and the

14

specification of the work to be performed collectively demonstrate that the parties agreed to essential terms and that the TCA is an enforceable contract. *See Lafayette*, 694 N.E.2d at 826.

CMA's allegations that: (1) it is willing and able to perform subcontractor services; (2) PCG has "explicitly stat[ed] that it does not intend to honor its obligations under the [TCA], and has otherwise breached the [TCA] by refusing to submit a proposal to DOH including CMA as a subcontractor"; and (3) "CMA has sustained money damages as a result of PCG's failure to honor its obligations" are adequate for stating a claim of breach. (Compl. ¶¶ 14-16.) As the TCA makes clear, if the contingencies provided therein were met, PCG was required to award the subcontract to CMA. (Dkt. No. 9, Attach. 2 at 3.) The complaint alleges that, despite the fact that DOH awarded PCG the prime contract, PCG "has explicitly refused to include or utilize CMA as a subcontractor on the project."[5] (Compl. ¶¶ 10, 14, 15.) Placing the allegations in the context of the TCA, which is enforceable, PCG's arguments are unavailing.

---

[5] CMA was not required to expressly plead that all of the contingencies were satisfied as argued by PCG. (Dkt. No. 9, Attach. 1 at 7-8.) The nonoccurrence of any of those contingencies is, however, fodder for a summary judgment motion.

## 2. Fraudulent Inducement

"To maintain a cause of action for fraudulent inducement of contract, a plaintiff must show 'a material representation, known to be false, made with the intention of inducing reliance, upon which [it] actually relie[d], consequentially sustaining a detriment.'" *Frank Crystal & Co. v. Dillmann*, 84 A.D.3d 704, 704 (1st Dep't 2011) (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Wise Metals Grp.*, 19 A.D.3d 273, 275 (1st Dep't 2005)). Under the Federal Rules of Civil Procedure, a party alleging a claim of fraud "must state with particularity the circumstances constituting fraud," however, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The Second Circuit has "repeatedly held" that, to satisfy Rule 9(b), the plaintiff must "'(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197 (2d Cir. 2013) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

Because CMA has failed to meet the heightened pleading standard under Rule 9(b), its claim of fraudulent inducement is dismissed. Most

obviously, CMA fails to explain why the identified statements made by PCG were fraudulent. The complaint alleges that "certain factual representations" were made by PCG to CMA "in an effort to secure CMA's participation in PCG's proposal." (Compl. ¶ 18.) The "representations" recited include PCG's expression to CMA that its status as a MWBE would help it obtain the prime contract, and "certain factual representations to CMA concerning [PCG's] ability to secure the contract . . . and . . . concerning other companies that were prospective bidders." (*Id.* ¶¶ 19, 20.) CMA also claims, without further elucidation, that "PCG engaged in other additional representations, omissions and conduct . . . in an effort to induce CMA to enter into the [TCA]." (*Id.* ¶ 21.) CMA merely alleges that these "representations were fraudulent." (*Id.* ¶ 24.) These conclusory allegations do not meet the requirements of Rule 9(b), and dismissal is required.

   *3. Breach of the Implied Covenant of Good Faith and Fair Dealing*

  "The purpose of the implied covenant is to ensure that neither party interferes with the ability of the other to enjoy the fruits of the contract and that, when performing the obligations of the contract, the parties 'remain faithful to the intended and agreed expectations' of the contract." *Chokel*

*v. Genzyme Corp.*, 867 N.E.2d 325, 329 (Mass. 2007) (quoting *Uno Rests., Inc. v. Boston Kenmore Realty Corp.*, 805 N.E.2d 957, 964 (Mass. 2004)) (internal citation omitted). The implied covenant is breached "when one party violates the reasonable expectations of the other." *Id.*

Here, CMA has stated a claim based upon its allegation that PCG, who "has explicitly refused to include or utilize CMA as a subcontractor," prevented it "from enjoying the benefits and privileges of its subcontract" by failing to act in good faith. (Compl. ¶¶ 10, 28-29.) PCG's arguments in support of dismissal, (Dkt. No. 9, Attach. 1 at 19-21), are quickly dispensed with as the complaint adequately alleges facts to support the claim, and, as discussed above, *see supra* Part IV.B.1, the TCA is an enforceable agreement.

### 4. Unjust Enrichment

Finally, under Massachusetts law, a claim of unjust enrichment requires proof of only the "unjust enrichment of one party and unjust detriment to the other party." *Salamon v. Terra*, 477 N.E.2d 1029, 1031 (Mass. 1985); *see Inniss v. Iliev*, 970 N.E.2d 813, 2012 WL 2527036, at *3 (Mass. App. Ct. 2012); *see also Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 412 F.3d 215, 234 n.7 (1st Cir. 2005). Here, a

claim of unjust enrichment has been stated by CMA. Indeed, CMA avers that it enriched PCG by providing it with proprietary and confidential information that it used to secure the DOH contract, PCG was unjustly enriched by that information, and that CMA suffered resulting harm. (Compl. ¶¶ 32-34.)

PCG's arguments that the court should scrutinize CMA's allegation that it provided proprietary and confidential information is baseless. (Dkt. No. 9, Attach. 1 at 21-22.) At this juncture, CMA's allegations are to be construed in the light most favorable to it. *See Faulkner v. Beer*, 463 F.3d 130, 133 (2d Cir. 2006). Moreover, that the TCA provided for the exchange of proprietary and confidential information does not require dismissal. CMA's obvious theory is that it provided proprietary and confidential information that was useful to PCG and assisted it in securing the DOH contract, and that PCG's breach prevented CMA from realizing any benefit under the TCA despite its provision of that information.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that PCG's motion to dismiss (Dkt. No. 9) is **GRANTED IN PART** and **DENIED IN PART** as follows:

**GRANTED** with respect to CMA's claim of fraudulent inducement; and

**DENIED** in all other respects; and it is further

**ORDERED** that PCG file the appropriate responsive pleadings within the time allotted by the rules; and it is further

**ORDERED** that the parties notify Magistrate Judge Randolph F. Treece in order to schedule further proceedings in accordance with this order; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

March 7, 2014
Albany, New York

*Gary L. Sharpe*
Gary L. Sharpe
Chief Judge
U.S. District Court